UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT T. LEWIS :
   :  **CASE NO.**
   **Plaintiff** :
   **v.** :  **3:16-cv-01382 (SRU)**
   :
   :
**CITY OF NEW HAVEN, ET AL.** :  **NOVEMBER 15, 2016**
   :
   **Defendants** :

<u>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS COUNT VI AND COUNTS XII AND XIII, IN PART, OF PLAINTIFF'S COMPLAINT BY DEFENDANTS CITY OF NEW HAVEN AND FORMER CHIEF OF POLICE NICHOLAS PASTORE, IN HIS OFFICIAL CAPACITY ONLY, AND COUNTS XII AND XIII, IN PART, BY DEFENDANT CITY OF NEW HAVEN</u>

## I. <u>RELEVANT BACKGROUND</u>

Plaintiff's Complaint is brought in thirteen counts that contain two hundred fifty-eight paragraphs. Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of his rights as secured by the United States Constitution, with the federal question jurisdiction of this court being invoked pursuant to 28 U.S.C. §§ 1331, 1343. (¶ 9.) The plaintiff is also making Connecticut state-law claims, with the supplemental jurisdiction of the court being invoked pursuant to 28 U.S.C. § 1367(a). (¶ 9.)

Counts I, II and III of the Complaint are brought against Defendants Raucci, Maher, Sweeney, Pettola and Lawlor, pursuant to 42 U.S.C. § 1983, and allege respectively: Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments; Derivation of Liberty without Due Process of Law and Denial of a Fair

Trial by Fabricating evidence, Withholding Material Exculpatory and Impeachment Evidence, and Deliberately Failing to Conduct a Constitutionally Adequate Investigation; and Civil Rights Conspiracy.  Count IV is brought against Defendants Maher, Sweeney, Pettola and Lawler, pursuant to 42 U.S.C. § 1983, and alleges a Failure to Intercede. Count V is brought against Defendants Sweeney, Pettola, Lawler and Pastore, pursuant to 42 U.S.C. § 1983, and alleges a Supervisory Liability Claim.  Count VI is the last count brought pursuant to 42 U.S.C. § 1983, and is directed against Defendant Pastore, in his official capacity, and Defendant City of New Haven, and alleges a Municipal Liability Claim.

Counts VII, VIII, IX, and XI of the Complaint are state law claims brought against Defendants Raucci, Maher, Sweeney, Pettola and Lawlor, and respectively allege: Malicious Prosecution, in Violation of Connecticut State Law; Abuse of Process, in Violation of Connecticut State Law; Intentional or Negligent Infliction of Emotional Distress, in Violation of Connecticut State Law; and violation of Article First, §§ 7, 8, and 9 of the Connecticut Constitution.  Count X is brought against Defendants Raucci, Maher, Sweeney, Pettola, Lawlor and Pastore and alleges Negligence, in Violation of Connecticut State Law.  Counts XII and XIII are directed to Defendant City of New Haven and respectively allege: Indemnification under Conn. Gen. Stat. § 7-465 and a Direct action under Conn. Gen. Stat. § 52-557n.  The only counts of the Complaint that are the subject of the motion to dismiss of Defendants City of New Haven and Pastore are Counts VI, XII and XIII.

Plaintiff's Complaint stems from the October 11, 1990 murders of Ricardo Turner and Lamont Fields, his wrongful arrest, conviction, incarceration for this crime, and the subsequent vacation of the murder convictions by the Connecticut Supreme Court. exoneration.   The factual allegations concerning plaintiff's contention that he was framed for the Turner-Fields homicides, primarily by Defendant Raucci, with the active involvement of, or acquiescence, of the other named individual defendants can be found in paragraphs 21 through 116 of the Complaint.   In these paragraphs there are allegations that the plaintiff had no involvement with the homicides, that he was framed for the homicides because he had run afoul of a drug kingpin associated with Defendant Raucci, that statements incriminating him for this crime were fabricated, manufactured and coerced, and that this led to his wrongful arrest, conviction and incarceration.

Allegations against Defendant City of New Haven and/or Defendant Pastore, in his official capacity, with respect to the "Monell" claim, can be found in paragraphs 14, 15, 117 through 135, 139 through 141, and in those paragraphs included in Count VI of the Complaint.  Specific allegations directed against Defendant City of New Haven with respect to the plaintiff's claims with respect to the state law claims based on Conn. Gen. Stat. § 7-465, Count XII (Indemnification) and Conn. Gen. Stat. § 52-557n, Count XIII (Direct Action) can be found in the specific paragraphs of those counts.

Defendant City of New Haven and Defendant Pastore, in his official capacity, only, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, now move to dismiss Count VI of plaintiff's Complaint for failure to state a claim upon which relief can be granted, and Defendant City of New Haven now moves to dismiss Counts XII and XII

of the Complaint, at least in part, for failure to state a claim upon which relief can be granted.

## II.  **MOTION TO DISMISS STANDARD**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert denied, 554 U.S. 930, 128 S. Ct. 2964 (2008); see also Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). However, with respect to a motion to dismiss made under this rule, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (citation omitted), a plaintiff's obligation to provide the 'grounds' for his [or her] "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id., at 555; see also Ashcroft v. Iqbal, 556 U.S. 662, 678,129 S. Ct. 1937 (2009).  For a plaintiff's complaint to state a claim, assuming that all the allegations in the complaint are true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]." Bell Atlantic Corporation v. Twombly, supra, at 555.  "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.  The plaintiff must

plead sufficient facts "to state a claim for relief that is plausible on its face."  Id., at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, supra, at 678.

A complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  (Citation omitted.)  Ashcroft v. Iqbal, supra, at 678.  "'Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'"  (Citation omitted.)  Id.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id., at 679.  "[A] declaration that defendant's conduct violated the ultimate legal standard at issue … does not suffice."  Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, supra, at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  (Citation omitted.)  Id., at 679.

## III    LAW AND ARGUMENT

### A.

### Claims brought pursuant to 42 U.S.C. § 1983 against Defendant City of New Haven and Defendant Pastore in his "Official Capacity"

Count VI of the Complaint is directed against Defendant Pastore, in his official capacity, and Defendant City of New Haven.  The count is entitled "42 U.S.C. § 1983 Municipal Liability Claim."  Count VI contains paragraphs 214 through 222, and is divided into three subparts entitled:  "Municipal liability based on Chief Pastore's ratification of and/or deliberate indifference to Raucci's Misconduct;" "Municipal liability based on the NHPD's custom, pattern, or practice of unconstitutional investigative techniques;" and "Municipal liability based on the NHPD's failure to supervise, discipline, and train its officers and detectives with respect to unconstitutional investigative techniques."  Paragraph 214 of Count VI incorporates by reference into this count the preceding 213 paragraphs of the Complaint.

Because "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred . . . [t]he first step in [analyzing] any claim is to identify the specific constitutional right allegedly infringed." (Internal quotation marks and citations omitted.)  Albright v. Oliver, 510 U.S. 266, 271 (1994); see also Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere").  **Section 1983, in pertinent part**, provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  42 U.S.C. § 1983.

To state a valid claim under § 1983, a plaintiff must establish: "(1) [that] the conduct complained of was committed by a person acting under color of state law; and (2) [that]

this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908 (1981). A municipality and other local government units are "persons" subject to suit under § 1983 for the deprivation of a constitutionally protected right. See Monell v. Dept. of Soc. Servs. Of the City of New York, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself." (Citations omitted.) Seri v. Town of Newtown, 573 F. Supp. 2d 661, 671 (D. Conn. 2008). In order to assert a viable § 1983 claim against a municipal employee being sued in his/her official capacity, the plaintiff must also have a viable § 1983 ("Monell") claim against the municipality. Id.

"A municipality or other local government may be liable under this section [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (Citation omitted.) Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350 (2011). "But, under § 1983, local governments are responsible only for 'their own illegal acts.'" (Citations omitted.) Id. "They are not vicariously liable under § 1983 for their employees' actions." (Citations omitted.) Id.

"[M]unicipalities [are] liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom. (Citations omitted.) Reynolds v. Giulaini, 506 F.3d 183, 190 (2d Cir. 2007). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy'

caused their injury." (Citation omitted.) Connick v. Thompson, supra, at 60. The plaintiff must demonstrate a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). The plaintiff must show that the municipal policy was the "'moving force [behind] the constitutional violation.'" (Citation omitted.) Id., at 389. "[T]he mere assertion … that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference …." (Citation omitted.) Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). "Mere conclusory allegations devoid of factual content will not suffice." Thurman v. City of Torrington, 595 F. Supp. 1521, 1530 (D. Conn. 1984).

Paragraphs 117, 118 and 119 of the Complaint, which are incorporated by reference into Count VI, are the first three paragraphs under the heading, "The NHPD's unconstitutional pattern, practice, or custom of coercing, fabricating, and/or suppressing witness and suspect statements." These three paragraphs contain the conclusory allegations relating to a policy, practice or custom of unconstitutional misconduct relating to witness statements, specifically the use of unconstitutional and/or coercive techniques to fabricate and/or coerce false inculpatory witness statements (¶ 117); a policy, practice or custom of failing to adequately supervise and discipline NHPD officers and detectives in the exercise of their constitutional obligations, including their obligations not to fabricate evidence, to commit perjury, and to disclose exculpatory evidence (¶ 118); and the failure of the NHPD and Defendant Pastore to supervise and discipline Defendant Raucci, and instead to promote and empower him, this being just

one example of the NHPD's unconstitutional conduct, there allegedly being many other NHPD officers and detectives engaged in unconstitutional conduct, none of whom were adequately supervised or disciplined (¶ 119).  What follows in paragraphs 120 through 131 is a litany of references to cases and incidents involving personnel of the New Haven Department of Police Service that apparently are being cited in an attempt to show that at the time of the incident involving the plaintiff, the existence of the policies, practices and customs alleged in paragraphs in 117 – 119.

Paragraph 120 of the Complaint alleges that in 1982 a federal jury found a New Haven police officer by the name of Mel Cartoceti liable for the use of excessive force and concluded that he had filed a false police report.  It is further alleged that Internal Affairs cleared him of any wrongdoing, that he was subsequently promoted to detective, and that then Chief Farrell of the New Haven Department of Police Service commented publicly that he was satisfied with the Internal Affair's response.  This situation described in this paragraph occurred approximately eight years prior to the homicides described in the Complaint and did not involve any of the principles in this matter.

In paragraph 121 it is alleged that in July of 1984 a New Haven police detective by the name of Anthony DiLullo was named as a defendant in a malicious prosecution lawsuit, and at trial it is alleged that he admitted misquoting statements given to him on the arrest warrant application and leaving out allegedly exculpatory information.  No information is supplied identifying the alleged malicious prosecution lawsuit, the result of the alleged lawsuit or whether the statements allegedly misquoted or the exculpatory information allegedly left out were of a minor nature.

Plaintiff in paragraph 122, makes reference to a state court lawsuit involving a 1991 arrest for a homicide, and the wounding of another individual.  The plaintiff brought federal claims of false arrest and malicious prosecution and common-law claims of false arrest, malicious prosecution, intentional infliction of emotional distress and negligence against two New Haven police detectives, Joseph Greene and Michael Sweeney, who is a defendant in this action.  The issue in the investigation of this matter was the identity of the shooter where there were conflicting witness descriptions.  In the arrest warrant for this matter, certain exculpatory information was alleged to have been left out.  A jury found in favor of the plaintiff in that matter, and the Connecticut Supreme Court in Ham v. Greene, 248 Conn. 508, 729 A.2d 740 (1999) affirmed.  It should be noted that one of the justices in Ham dissented, and would have found probable cause for the arrest.

In paragraph 123, there is reference to a May 8, 1990 homicide investigated by the previously mentioned detectives Greene and DiLullo in which an individual by the name of Maceo Streater was arrest.  Mr. Streater's arrest was allegedly the result of a statement provided by a witness that was tape recorded and transcribed.  The witness subsequently reviewed the statement and signed the last page.  At trial the witness recanted the statement, and said that it had been coerced.  No information is provided in this paragraph as to the verdict rendered at Mr. Streater's trial, or any further disposition, that would make a finding as to whether there had been coercion with respect to the statement obtained by Detectives Greene and DiLullo from the witness.

Paragraph 124 of the Complaint describes a double homicide that occurred in 1991 that was also investigated by Detectives Greene and DiLullo.  An individual by the

name of Daryl Valentine was arrested for this crime and went to trial.  At trial there were allegations of coerced statements secured through bribery and threats, which statements were recanted at trial.  Mr. Valentine was convicted and his conviction was affirmed by the Connecticut Supreme Court in State v. Valentine, 255 Conn. 61, 762 A.2d 1278 (2000).

Plaintiff, in paragraph 125 makes reference to events in the early 1980s to New Haven police officer by the name of Billy White who was disciplined for "conduct unbecoming an officer."  It is alleged that White had pointed a weapon at the heads of school children made a racial comment and threatened to blow their heads off if they moved, and that during the investigation of this incident he had lied in his reports and subsequent reports.  It is further alleged in this paragraph that the only discipline meted out by then Police Chief Farrell was a basic reprimand.

Billy White is again mentioned in paragraph 126 where it is alleged that in April 1990, Defendant Pastore promoted then Sergeant White to head the Criminal Intelligence Section of the New Haven Department of Police Service.  It is further alleged that one of the goals of this position was to assist the Chief in responding to community complaints of excessive force and ineffective drug policing.  Prior to his promotion it is alleged that White and four other officers were sued by the mother of a 13-year old boy where it was claimed that White and the others had beat her son for no apparent reason.  The paragraph is devoid of any mention of the disposition of this lawsuit or as to whether there was ever finding of liability against White or any the other officers.  The plaintiff then goes on to allege that White remained with the New Haven

Department of Police Service until approximately 2007, long after the events in this case, when he was arrested by the FBI, and subsequently pled guilty to corruption-related charges.   There is no mention in this paragraph as to the nature of the corruption-related charges, or how this event, occurring many years after events involving the plaintiff, is related.

Paragraph 127 alleges that in the late 1980s and early in 1990, a group of patrolling New Haven police officers made what the public perceived to be concerted effort to increase seemingly random police harassment and beatings of New Haven's black and Hispanic teenagers, including a December 12, 1989, beating of an individual that prompted responses from the local NAACP.  It is further alleged that Police Commander Leonard Gallo, who supposedly oversaw the police department's main anti-drug offensive, said that he saw no major problem.  This paragraph makes no claim that any lawsuits were filed, or that any judgments or findings of liability were made against the involved officers due to the above described activities.

In paragraph 128 it is alleged that in 1993, Commander Gallo was the highest ranking officer working a weekend shift when an individual who was twenty years old was shot.  It is claimed that Gallo told the New Haven Register that the victim was involved in the drug trade which was apparently incorrect.  There is no further allegation as to how this statement by Gallo in related to the claims being made by the plaintiff in this matter.

Paragraph 129 alleges that a New Haven police officer by the name of Vincent Riccio, from approximately 1986 through his resignation in 1993, had 14 complaints

filed against him that did not result in any official disciplinary action being taken against him, and that he was promoted to Sergeant, being the second person selected by Chief Pastore to pioneer his community-based policing program.  This paragraph does not provide any information as to the nature of the "complaints," whether this is a reference to lawsuits or to complaints made to Internal Affairs, and if the reference is to lawsuits, their disposition.

Paragraph 130 makes reference to the murder of Philip Cusick that took place in 1996, after the investigation, arrest and conviction of the plaintiff.  This affair did not involve any of the individual defendant police officers named in this case, nor the defendant chief of police.  It is alleged in this paragraph that a subsequent investigation by Internal Affairs led to the head of detectives and his deputy being implicated in the mishandling of the investigation and evidence.  The head of detectives, according to this paragraph, was eventually arrested related to his suppression of a statement and hindering the investigation, and it is further alleged that though the actions of the deputy could have been interpreted as tampering with a witness, no action was taken against him by the then police chief.

Paragraph 131 states that "[i]n addition to the misconduct discussed above, the NHPD also exhibited a long-standing pattern of concealing exculpatory information in connection with witness interviews, including by engaging in misconduct prior to the taking a taped witness statement or by destroying a taped statement to the defense. The plaintiff makes reference to eight appellate court decisions in this paragraph.  In five of the cited decisions, State v. Myers, 193 Conn. 457, 479 A.2d 199 (1984); State v.

Mullins, 202 Conn. 1, 519 A.2d 58 (1987); State v. Belle, 215 Conn. 257, 576 A.2d 139 (1990); State v. Johnson, 214 Conn. 161, 571 A.2d 79 (1990); and State v. Cerilli, 222 Conn. 556, 610 A.2d 1130 (1992), the convictions of the defendants were affirmed.  In the other three cases, State v. Williamson, 212 Conn. 6, 562 A.2d 470 (1989); In re Jesus C., 21 Conn. App. 161, 575 A.2d 1031 (1990); and State v. Jones, 29 Conn. App. 304, 615 A.2d 149 (1992), new trials were ordered, on in the case of Williamson, the Appellate Court's ordering of a new trial was affirmed.  In none of the eight cases cited in paragraph 131 of the Complaint was there a finding of bad faith on the part of the police department.

Paragraph 139 of the Complaint alleges that Defendant Pastore was specifically informed on more than one occasion by Hector Ortiz, a civilian, that Mr. Ortiz knew Defendant Raucci to be a corrupt officer.  It is not alleged in this paragraph as to where or when, and in what context this information was imparted.  It is further alleged in this paragraph that "Mr. Ortriz knew about Raucci's illicit associations with Mr. Parise," however, there is no allegation that he, Mr. Ortiz, told Defendant Pastore of this association.

"The question, then, is whether the nonconclusory allegations in the Amended Complaint are sufficient to render the Monell claims plausible."  Goode v. Newton, 2013 U.S. Dist. LEXIS 35171, *21, (Arterton, J., D. Conn. 2013); 2013 WL 1087549.  Where a case, such as this one involves a claim that a municipal policy or custom caused a constitutional injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for actions of its employees."  Bd. of

County Commissioners v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382 (1997). "The problem is that none of the facts show that there has been *any* violation of constitutional rights, so there is no evidence of the predicate fact underlying the alleged custom or policy.  Plaintiffs seem to proceed on the assumption that if a complaint, whether administrative or by was of a civil action, is filed against an officer, it follows *ipso facto* that he is guilty of a constitutional violation, a proposition [the court] cannot accept." (Emphasis in original.)  Rasmussen v. City of New York, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011).  "[A]llegations of complaints about similar conduct [are] insufficient to state a claim for a widespread custom under Monell because 'the number of complaints filed, without more, indicates nothing, as '[p]eople may file a complaint for many reasons, or for no reason at all,' and '[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist.'"  (Citation omitted.) Tieman v. City of Newburgh, 2015 U.S. Dist. LEXIS 38703, *49 (Karas, J., S.D.N.Y. 2015).  "A list of cases may only support an allegation of widespread practice when they are combined with anecdotal evidence and other factual allegations of the alleged policy or custom."  (Citations omitted.)  Jones v. City of New York, 2016 U.S. Dist. LEXIS 44609, *25 (Carter, J., S.D.N.Y. 2016).

The Tieman v. City of Newburgh, supra, case is instructive on this issue.  The size of the police force involved in the Tieman case was seventy-five (75).  Tieman v. City of Newburgh, supra, at *51.  In Tieman it was alleged that the City of Newburgh "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional

rights." Id., at *40.  The complaint in Tieman citied to what it described as "an extensive history of lawsuits and other complaints," alleging that a least nine excessive-force suits were filed against the defendant city in the preceding five years, including five that made similar allegations as to what was being alleged by the Tieman plaintiff.  Id., at *44-45. It was further alleged by the Tieman plaintiff that the defendant city was on notice of the excessive force problem because of comments from citizens at public forums about the police using excessive force and because of a consulting group's report on the police department's practices.  Id., at *9-10.  The Tieman court, however, held that the complaint was insufficient to suggest a widespread custom or practice.  Id., at *48.  It was noted by the court in Tieman that none of the lawsuit cited by the plaintiff "had resulted in an adjudication of liability,"  Id.   "Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands if arrests, were made does not plausibly demonstrate the use of excessive force during arrest was so frequent and pervasive to constitute and custom."  Id., at *50. See also Gonzalez v. Waterbury Police Dep't, 2016 U.S. Dist. LEXIS 32001, at *10-11 (Underhill, J., D. Conn. 2016), (though the motion being decided was one for summary judgment, the court did state, that the plaintiff's allegations "raise sweeping concerns about the competency of Waterbury's Internal Affairs Division.  He does not, however, identify any incidents where the division received a complaint like [his] and failed to address it.  Though he attempts to establish a pattern and practice of police misconduct by providing a summary of lawsuits filed against Waterbury police officers, that

information only weakens his position.  Out of the thousands of arrests that occurred in the City of Waterbury during the relevant period, there were only a handful of complaints of excessive force.  Most importantly, only one of those cases resulted in a judgment in favor of the plaintiff. . . .   The information cited by [the plaintiff] does not establish a pattern or practice of unconstitutional deprivations.")

It would appear that the primary claim in this matter against the individual defendants that the plaintiff was consciously framed, essentially by Defendant Raucci, through the use of fabricated evidence, and that the other individual defendants knowingly participated in this enterprise, or turned a blind eye to it.  None of the cases or incidents cited to by the plaintiff in an attempt to plead a "Monell" come even close to the situation alleged in the Complaint.  In the lawsuits and incidents cited to by the plaintiff in his attempt to support his "Monell" claim there are only two incidents prior to the arrest and conviction of the plaintiff where New Haven police officers are alleged to have had a judgment entered against them for anything close to the claims being made in this case, one in 1982 (¶120) an excessive force case, here it is alleged that the defendant police officer filed a false report, and a lawsuit arising out of a 1991 arrest (¶ 122) where the officers are alleged to have made misleading statements and omitted material facts in an arrest warrant.

While a Section 1983 action against a municipality may be based on a practice that "'was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,'" (citations omitted), and "[t]he alleged custom or practice need not be embodied in a rule or regulation," (citation omitted), it is necessary that "the alleged

practice 'must be so manifest as to imply the constructive acquiescence of senior policy-making officials.'"   (Citation omitted.) <u>Green v. City of New York</u>, 465 F.3d 65, 80 (2d Cir. 2006).  Section 1983 "does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim on a failure to train." <u>Connick v. Thompson</u>, supra, at 61.   "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy <u>Monell's</u> requirement that the particular policy be the 'moving force' behind a *constitutional* violation.  (Emphasis in original.) <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 37 (2d Cir. 2008).

## B.

### Claim brought for Indemnification pursuant to Conn. Gen. Stat. § 7-465 against Defendant City of New Haven as it applies to those claims brought by the plaintiff against Defendant Raucci

Count XII of the Complaint is directed against Defendant City of New Haven and seeks Indemnification from the City, pursuant to Conn. Gen. Stat. § 7-465, for those tortious acts of the individual defendants upon which liability to the plaintiff is imposed. Section 7-465 reads in pertinent part as follows:

> "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of an employee of such municipality, . . .all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the

occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any willful or wanton act of such employee in the discharge of such duty."

Paragraph 43 of the Complaint alleges "[u]pon information and belief, Raucci acted on behalf of and/or in collaboration with Mr. Parise to frame Mr. Lewis for the Turner-Fields murders." Based upon this allegation Defendant Raucci was not acting within the scope of his employment with the New Haven Department of Police Service. "The factual conclusion [that an individual's criminal acts] occurred during business hours, however, is not sufficient to support the conclusion that [the employee] was acting within the scope of his employment."  (Citations omitted.) A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 209 (1990).  "A servant acts within the scope of employment 'while engaged in the service of his master, and it is not synonymous with the phrase 'during the period covered by his employment.'"  (Citation omitted.) Id., at 209-10.  "While a servant may be acting within the scope of his employment when his conduct is 'negligent, disobedient and unfaithful'; (citations omitted); that does not end the inquiry.  Rather, 'the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of his master's business . . . .'"  (Citation omitted.) Id., at 210.  "Unless [the employee] was actuated at least in part 'by a purpose to serve a principal, the principal is not liable.'"  (Citation omitted.) Id.  It is clear based on the allegations of the Complaint that Defendant Raucci was not acting within the "scope of his employment" as required by Conn. Gen. Stat. § 7-465.  As a result, the

plaintiff has failed to allege a cause of action for indemnity against Defendant City of New Haven with respect to any damages awarded against Defendant Raucci.

## C.

### Direct Action Claim brought pursuant to Conn. Gen. Stat. § 52-557n against Defendant City of New Haven as it applies to those non-negligent claims brought by the plaintiff against the individual defendants

Count XIII of the Complaint is directed against Defendant City of New Haven and alleges liability based upon the negligent and grossly negligent actions of its employees. Unfortunately, paragraph 256 of Count XIII incorporates by reference all the proceeding paragraphs of the Complaint, some of which allege intentional torts.  "It is axiomatic that a government subdivision can act only through natural persons as its agents or employees."  (Citations omitted.)  O'Connor v. Board of Education of the Town of Wethersfield, 90 Conn.App. 59, 66, 877 A.2d 860 (2005).  As to the intentional tort claims, the law is that "a municipality cannot be liable for the intentional conduct of is its employees under Conn.Gen.Stat. § 52-557."  (Citations omitted.)  Nanos v. City of Stamford, 609 F. Supp.2d 260, 267 (D.Conn. 2009).  As a matter of law, the protection of subsection (a)(2) of Conn.Gen.Stat. § 52-557 is available to Defendant City of New Haven, and it is immune from liability for any claim for intentional tort claim, if such claims are being made against it by the plaintiff in this count.  See O'Connor v. Board of Education of the Town of Wethersfield, supra, at 66.

## III.   CONCLUSION

The motion to dismiss should be granted.

THE DEFENDANTS, NICHOLAS
PASTORE, IN HIS OFFICIAL
CAPACITY, AND THE CITY OF NEW
HAVEN

BY:    /s/   *Michael A. Wolak, III*
       Michael A. Wolak, III (ct12681)
       Assistant Corporation Counsel
       Office of Corporation Counsel
       165 Church Street
       New Haven, CT 06510
       Tel. #: (203)946-7970
       Fax #: (203) 946-7942
       Email: mwolak@newhavenct.gov
       Their Attorney

## **CERTIFICATION**

      I hereby certify that on November 15, 2016, the Memorandum of Law in Support of the Motion to Dismiss of Defendants Nicholas Pastore, in his official capacity, and the City of New Haven was filed electronically and served by mail, if necessary, on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

       /s/   *Michael A. Wolak, III*
         Michael A. Wolak, III